UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRYSTAL L KALLIO,

Plaintiff,

v.

Case No. 25-cv-0572-bhl

FRANK J. BISIGNANO, Commissioner of the Social Security Administration,

Defendant.

## DECISION AND ORDER

On June 22, 2022, Plaintiff Crystal L. Kallio applied for disability insurance benefits under the Social Security Act, 42 U.S.C. §405(g). (ECF No. 9-1 at 21.) Her claims were denied initially and on reconsideration, and she then requested a hearing before an administrative law judge (ALJ). (*Id.*) Following a September 12, 2024 hearing, the ALJ concluded Kallio was not disabled and denied her claim. (*Id.* at 35, 46.) On February 13, 2025, the Appeals Council denied Kallio's request for review of that decision. (*Id.* at 5.) Kallio now seeks judicial review pursuant to 42 U.S.C. §405(g) and seeks a remand based on the ALJ's: (1) failure to credit opinions from her pain treatment provider; (2) finding that one state agency psychological consultant was "less persuasive" than another; and (3) failure to give sufficient weight to Kallio's subjective report of her symptoms. (ECF No. 13.) Because the record supports the ALJ's handling of all three challenged groups of evidence, the Commissioner's decision is affirmed.

## BACKGROUND

The ALJ found that Kallio was thirty-seven years old as of the alleged disability onset date of July 1, 2021, and has a college degree and experience working as an extrusion operator and part-time teacher. (*Id.* at 27–28, 217–18, 282.) Kallio maintains that her fibromyalgia, spinal stenosis, post-traumatic stress disorder, major depressive disorder, general anxiety disorder, panic attacks, and insomnia limit her ability to work. (*Id.* at 23–24, 281.)

The ALJ was presented with a variety of expert opinions related to Kallio's physical problems and limitations. State agency physician consultants reviewed Kallio's claim and found that she retained the physical capacity for work in the light exertional range with frequent stooping and climbing of ladders, ropes, and scaffolds. (*Id.* at 32, 107–08, 118–19.) Kallio's pain management provider, Jocelyn Acompanado, PA-C, opined that Kallio could not sit for longer than 30 minutes before needing to change position and is unable to stand for longer than 30 minutes. (*Id.* at 32, 534–39.) Acompanado also indicated that Kallio could rarely use her upper extremities for reaching, handling, and fingering and could not lift and carry even five pounds. (*Id.*)

The ALJ also received opinions from two state agency psychological consultants concerning Kallio's disability claim. Catherine Bard, Psy.D., opined that Kallio has mild limitations in her ability to understand, remember, and apply information and interact with others and moderate limitation in her ability to concentrate, persist, or maintain pace and adapt and manage herself. (*Id.* at 33, 109–110.) Dr. Bard further explained that Kallio can maintain attention sufficient to carry out short, simple tasks for 2 hours at a time with normal breaks in an 8-hour workday and is capable adapting to the demands of simple work activity. (*Id.*) Jason Kocina, Psy.D., confirmed Dr. Bard's assessment about Kallio's mild limitations and her ability to manage herself but further opined that Kallio could concentrate on 2–3 step tasks for up to 1–2 hours at a time with normal breaks and that her emotional lability may occasionally interrupt concentration, requiring her to reorient on the task at hand. (*Id.* at 33, 119–120.)

The ALJ held a hearing on September 12, 2024, at which Kallio testified. (ECF No. 9-1 at 48.) At the hearing, Kallio reported lower extremity edema and difficulty walking at times, along with anxiety, depression, and post-traumatic stress disorder that resulted in various debilitating symptoms and limitations. (*Id.* at 29, 31, 53–55, 60.)

The ALJ analyzed the medical opinions, Kallio's testimony, and the other evidence in the administrative record using the five-step sequential analysis applicable to claims for Social Security benefits. At step one, the ALJ concluded that Kallio had not engaged in substantial gainful activity since her alleged onset date. (*Id.* at 23.) At step two, the ALJ found that Kallio had the following severe impairment: fibromyalgia, degenerative disc disease, knee degenerative joint disease, depressive disorder, anxiety disorder, and post-traumatic stress disorder. (*Id.*) At step three, the ALJ determined that none of those impairments met or equaled any of the agency's

listings of impairments. (*Id.* at 24.) The ALJ then found Kallio had the residual functional capacity (RFC) to perform light work with additional limitations: she could never climb ladders, ropes and scaffolds or be exposed to workplace hazards and could occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, crawl, and balance; frequently reach, handle, and finger with bilateral upper extremities; and can maintain attention, concentration, persistence, and pace for the performance of simple, routine tasks, but is limited to simple decision making and simple changes that occur no more than occasionally. (*Id.* at 27.) At step four, the ALJ found Kallio could not perform her past relevant work. (*Id.* at 34.) At step five, however, the ALJ found that there were a significant number of jobs in the national economy that Kallio could perform. (*Id.* at 34–35.) The ALJ therefore determined that Kallio was not disabled. (*Id.* at 35.)

**LEGAL STANDARD**

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). In reviewing the record, the Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial

review is deferential and is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

## ANALYSIS

Kallio challenges three aspects of the ALJ's decision. First, Kallio argues that the ALJ did not properly consider the opinion of her pain management provider, Acompanado. (ECF No. 13 at 4–11, 13–15.) Second, Kallio faults the ALJ for rejecting state agency psychological consultant Dr. Kocina's opinion about Kallio's concentration deficits. (*Id.* at 15–18.) Third, Kallio argues that the ALJ failed to properly evaluate her subjective symptoms. (*Id.* at 11–13, 18–21.) Because the record supports the ALJ's conclusions, and Kallio's challenges improperly invite the Court to reweigh the evidence to rule in her favor, the Commissioner's decision must be affirmed.

### I. The ALJ Analyzed Acompanado's Opinion Consistent with the Applicable Social Security Regulations.

Kallio first argues that a remand is required because the ALJ declined to credit the opinion of her pain management provider, finding it "largely unpersuasive." (ECF No. 13 at 4.) Because the record shows that the ALJ thoroughly analyzed the evidence of Kallio's claimed disabilities, including the relevant medical evidence, the ALJ's decision not to follow the pain management provider's opinions is not a basis for remand.

Social Security regulations provide that when evaluating and articulating the persuasiveness of a medical opinion, ALJs should consider supportability, consistency, the medical provider's relationship with the claimant, any specializations, and any other factors that tend to support or contradict the opinion. 20 C.F.R. §404.1520c(c)(1)–(5). Of these, supportability and consistency are the most important. *Id.* §404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . ."). An ALJ's failure to properly consider and explain application of these factors to medical opinions in the record can be reversible error. *See, e.g., Maynard v. Saul*, No. 20-cv-677-wmc, 2021 WL 3362554, at *3–4 (W.D. Wis. Aug. 3, 2021); *Lenz v. Kijakazi*, No. 20-cv-1810-SCD, 2022 WL 154548, at *5–8 (E.D. Wis. Jan. 18, 2022).

As a general matter, the record confirms that the ALJ considered and applied the relevant factors here. The ALJ found persuasive the state agency medical consultants' opinions that Kallio retained the physical capacity for work in the light exertional range with frequent stooping and climbing of ladders, ropes, and scaffolds. (ECF No. 9-1 at 32.) He adjusted his conclusions based on Kallio's testimony to provide greater postural, manipulative, and environmental limitations to

account for her more recent upper extremity symptoms and persistent fatigue. (*Id.*) The ALJ's findings and explanation are reasonable and appropriate.

The record further confirms that the ALJ adequately explained his decision not to credit the opinion of Kallio's pain treatment provider, Acompanado. In her May 2022 opinion, Acompanado concluded that Kallio was unable to sit for longer than 30 minutes before needing to change positions and was unable to stand for longer than 30 minutes; could rarely use her upper extremities for reaching, handling, or fingering; and was unable to lift and carry even 5 pounds. (*Id.* at 32.) The ALJ explained he was unpersuaded by these conclusions for multiple reasons, including that they were not supported by three preceding physical examinations of Kallio. (*Id.*) The ALJ noted that at Kallio's first visit in October 2021, Acompanado documented normal observations, with some weakness in Kallio's left elbow. (ECF No. 9-1 at 32 (citing ECF No. 9-1 at 428).) At Kallio's second appointment in December 2021, Acompanado noted that Kallio had intact strength (5/5) in the upper and lower extremities, normal gait, and no abnormalities in mental status, although she did have 15/18 fibromyalgia tender points. (*Id.* (citing ECF No. 9-1 at 388).) At Kallio's third appointment in February 2022, Acompanado indicated that Kallio had 80% improvement with treatment, and Acompanado failed to document any recommended restrictions but instead encouraged movement and exercise. (*Id.* at 32–33 (citing ECF No. 9-1 at 582).) The ALJ concluded that these examinations indicated a stability in treatment and did not support the opinions Acompanado offered in May 2022. (*Id.*) The ALJ further commented that Acompanado's treatment notes similarly failed to support the May 2022 opinion. (*Id.* at 33.) The ALJ also explained that Kallio's reported activities, which included a degree of lifting and postural activity, such as tending to personal care and household chores, caring for the children in her house, driving, refinishing furniture, doing yard work, and plastering a ceiling, were also a basis not to credit Acompanado's opinion. (*Id.*) The record thus amply supports the ALJ's evaluation of the pain treatment provider's opinions.

Despite the ALJ's explanations and citations to the record, Kallio finds fault with the ALJ's assessment of Acompanado's opinion. Kallio first criticizes the ALJ for improperly failing to consider a fourth physical examination that Acompanado conducted on March 2024. This critique fails based on timing. The ALJ analyzed and declined to adopt an opinion that Acompanado issued on May 6, 2022—nearly two years *before* the March 2024 examination took place. (ECF No. 9-1 at 539.) As a matter of logic, Acompanado's May 2022 opinion could not have been based on the

March 2024 examination. Accordingly, the ALJ correctly noted that the opinion had been based on "approximately three prior treatment visits," (ECF No. 9-1 at 32), and understandably did not attempt to analyze it based on information that arose later. Moreover, the ALJ rejected Acompanado's opinion not based on the number of visits but rather because "the degree of limitation assessed" was "inconsistent with the overall evidence," which included longitudinal physical examinations, stability in treatment, and reported activities. (*Id.* at 32–33.)

Kallio next challenges the ALJ's treatment of Acompanado's opinion by complaining that he failed to consider evidence supporting the opinion and should have listed the evidence supporting the opinion. She also claims the ALJ "ignored" the 15/18 fibromyalgia positive tender points and improperly relied upon her noted improvements following treatment. (ECF No. 13 at 6–9.) To the extent that these criticisms are more than minor nitpicking, they are not a basis for remand. As Kallio concedes, the ALJ provided a thorough discussion of Kallio's medical history and various indications of pain aggravation, disc bulging, foraminal stenosis, and atrophy, (ECF No. 9-1 at 28 (citing ECF No. 9-1 at 387, 464, 470, 486, 488)), specifically acknowledged Kallio's fibromyalgia tender points, (*id.* at 32), and nonetheless found that Acompanado's opinion was not consistent with the overall evidence and competing opinions, (*id.* at 33). The ALJ also properly considered Kallio's improvement with treatment, temporary or otherwise.

Kallio next complains that the ALJ improperly weighed the evidence of Kallio's daily activities. (ECF No. 13 at 9–11.) She maintains that the ALJ improperly considered Acompanado's recommended movement and exercise and Kallio's ability to perform daily activities, including personal care, household chores, caring for children, driving, refinishing furniture, doing yardwork, and plastering a ceiling. (*Id.*) Kallio insists that her daily activities do not establish that she could perform "any degree of sustained physical activity." (*Id.* at 10.) This contention does not withstand scrutiny. An ALJ is permitted to consider a claimant's daily activities. *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). The ALJ noted that Acompanado's opinion was inconsistent with Kallio's reported ability to refinish furniture, do yard work, and plaster a ceiling and her recommendation to exercise. (ECF No. 91 at 33.) The ALJ therefore properly considered Kallio's daily activities. Moreover, even if the ALJ's reliance was error, it was harmless, because the ALJ also found Acompanado's opinion inconsistent with

Kallio's medical documentation after providing a thorough review of Kallio's medical history. (*See id.* at 27–34.)

Finally, Kallio attacks the ALJ for assigning less restrictions than recommended by Acompanado but greater limitations than recommended by the state agency consultants. (ECF No. 13 at 5–11, 13–15.) Kallio contends that the state agency consultants opined that Kallio had no manipulative limitations, but the ALJ nonetheless imposed additional limitations to account for testimony, recent upper extremity symptoms, and persistent fatigue. (*Id.* at 13 (citing ECF No. 9-1 at 32).) She therefore takes the position that the ALJ either needed to adopt Acompanado's opinion in full or the state agency consultants' opinion in full. (*Id.*) Oddly, this argument suggests that the ALJ erred by imposing *more* restrictions than suggested by state agency consultants. In any event, the responsibility for assessing a claimant's RFC resides with the ALJ, *see* 20 C.F.R. §404.1520c(a), and therefore, an ALJ is not required to rely on a particular physician's opinion or choose between the various opinions of a claimant's physicians, *see Schmidt v Astrue*, 496 F.3d 833, 845–46 (7th Cir. 2007). And the ALJ supported his greater limitations with substantial evidence: Kallio's hearing testimony that she had recent upper extremity symptoms and persistent fatigue. (ECF No. 9-1 at 32, 58–61.) Even if the ALJ's determination was considered an error, such error is harmless, because it benefitted Kallio.

In sum, Kallio's challenge to the ALJ's treatment of her pain treatment provider's opinion testimony amounts to little more than an impermissible invitation for the Court to reweigh the evidence in her favor. *See Estok*, 152 F.3d at 638. This is not a valid basis for remand.

## II. The ALJ Appropriately Analyzed Dr. Kocina's Opinion.

Kallio's second ground for remand faults the ALJ for finding Dr. Kocina's opinion "less persuasive" than the other state agency psychological consultant. (ECF No. 13 at 15–17.) Because the record shows that the ALJ considered the supportability and consistency of Dr. Kocina's opinion before ultimately deciding not to accept it, Kallio's second ground also fails to provide a basis for remand.

In analyzing Kallio's mental deficits, the ALJ found Dr. Bard's opinion persuasive, rather than Dr. Kocina's. (ECF No. 9-1 at 33.) Dr. Bard opined that Kallio had mild limitations in her ability to understand, remember, and apply information and interact with others, and moderate limitations in her ability to concentrate, persist, or maintain pace and adapt and manage herself. (*Id.*) She further reported that Kallio could maintain attention sufficient to carry out short, simple

tasks for 2 hours at a time with normal breaks in an 8-hour workday and was capable of adapting to the demands of simple work activity. (*Id.*) The ALJ explained that he found Dr. Bard's assessment credible because it was supported by Kallio's subjective reports and abnormalities in mental status examinations (variability in mood, affect; fair concentration, judgment) and in light of her documented response to treatment (appropriate interaction, intact memory, average fund of knowledge), and reported activities (caring for her children and maintaining their school schedule, managing her medication and medical care, shopping, driving, and handling money). (*Id.*)

In contrast, the ALJ found "less persuasive" Dr. Kocina's opinion that Kallio could only concentrate on 2–3 step tasks for up to 1–2 hours at a time with normal breaks and that her emotional lability could occasionally be expected to interrupt concentration, requiring her to reorient to the task on hand. (*Id.*) The ALJ noted that Dr. Kocina's explanation was not stated in vocationally relevant terms and that the treatment notes were inconsistent with his findings. (*Id.*) The ALJ further explained that, while the record documented variability in mood and affect while discussing life stressors, Kallio remained engaged during her visits and displayed logical and coherent thought process and fair concentration. (*Id.*) He further noted that the treating providers never documented deficits in attention and/or concentration. (*Id.*)

Kallio disagrees with the ALJ's decision not to adopt Dr. Kocina's opinion about her concentration. (ECF No. 13 at 14–17.) Kallio first takes issue with the ALJ's remark that the opinion was not presented in vocationally relevant terms. (*Id.* at 16.) She also argues that the ALJ erred in noting that her mood and affect varied when discussing life stressors and contends Dr. Kocina was also aware that Kallio remained engaged and displayed logical and coherent thought process. (*Id.* at 16–17.) These arguments reflect disagreements with the ALJ's analysis and conclusions but are not a basis for remand. *See Steele*, 290 F.3d at 941.

In the end, the ALJ explained that he discredited Dr. Kocina's concentration recommendation because there was no other record evidence of concentration deficits. (ECF No. 9-1 at 33 ("[T]reating providers for medical issues failed to document deficits in . . . concentration.").) There is nothing improper or unsupported in this decision, and the ALJ's failure to adopt Dr. Kocina's opinion is not a basis for remand.

## III. The ALJ Properly Evaluated Kallio's Subjective Symptoms.

Kallio's final ground for remand is her contention that the ALJ improperly discredited her subjective symptoms. (ECF No. 13 at 11–13, 18–21.) This is an uphill battle. While an ALJ must

consider a claimant's subjective statements about symptoms and limitations, *see* 20 C.F.R. §404.1529, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability," 42 U.S.C. §423(d)(5)(A). The record confirms that the ALJ properly relied upon medical documents to support his finding that Kallio's statements concerning the intensity, persistence, and degree of limitation were not sufficiently consistent with the medical evidence.

The applicable regulations provide a number of factors for assessing a claimant's statements about the intensity and persistence of her symptoms and how they limit her capacity for work. *See* 20 C.F.R. §404.1529(c). These factors include objective medical evidence, information from a claimant's medical sources about her symptoms, a claimant's daily activities, a claimant's course of treatment, inconsistencies between a claimant's statements, and other evidence. §404.1529(c)(2)–(4). An ALJ is only required to give reasons for the weight given to a claimant's statements sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony. *See* SSR 16-3p, 81 Fed. Reg. 14166, 14171 (Mar. 16, 2016). ALJs must consider a claimant's "own description or statement of . . . her physical . . . impairment(s)." SSR 16-3p, 82 Fed. Reg. 49462, 49463 (Oct. 25, 2017). This is a two-step process. First, the ALJ looks to "whether there is an underlying medically determinable physical . . . impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if the ALJ is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023).

Kallio takes issue with the ALJ failing to account for her cane use during flare ups, which she mentioned in her hearing testimony, in determining her RFC. (ECF No. 13 at 11–13.) Specifically, she faults the ALJ for noting that there was no indication that a cane was medically necessary and insists that medical evidence supported her cane use. (*Id.*) This argument again asks the Court to reweigh the evidence, which is not its proper role. *See Estok*, 152 F.3d at 638. The ALJ explained that Kallio's treatment documents indicated "largely intact range of motion, strength in the upper and lower extremities, coordination, sensation, and gait[.]" (ECF No. 9-1 at 30.) And, to support this finding, he cited to examinations indicating Kallio's ability to squat, heel walk, and toe walk; normal gait; normal range of motion; normal strength; and intact sensation.

(*Id.* at 28–30 (citing ECF No. 9-1 at 392, 412–13, 419, 481, 494, 551, 582, 915, 1190, 1247, 1249).) These facts build a logical bridge to the ALJ's conclusion that Kallio does not need a cane. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ therefore used objective medical evidence to disregard Kallio's statement about her cane use and did not commit error. *See* 20 C.F.R. §404.1529(c)(2)–(4).

Next, Kallio argues that the ALJ improperly assessed her subjective complaints of pain and improperly considered her use of medications, which provided only partial or brief relief. (ECF No. 13 at 18–20.) When evaluating the subjective symptoms analysis, the ALJ's credibility determination will not be reversed "as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) (citing *McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011)). The ALJ pointed to a plethora of evidence, including Kallio's own admission, that pain medication helped her pain management. (ECF No. 9-1 at 28–29 (citing ECF No. 9-1 at 419, 387, 920, 924–25, 1178–1214, 1241–1254, 1269–1281, 578, 582).) And the ALJ did not state that pain medication alleviated all pain but noted that it *improved* the pain. (*Id.*) Because the ALJ provided more than one reason to support his finding, and did not otherwise misstate record evidence, Kallio's argument is not a basis for remand.

Finally, Kallio faults the ALJ for "relying heavily" upon Kallio's daily activities, which, she contends, do not suggest that she was not as limited as she maintains. (ECF No. 13 at 19–20.) But the ALJ's use of Kallio's daily activities to evaluate her credibility is a proper use of such evidence. *See* 20 C.F.R. §404.1529(c)(3)(i). Although ALJs should not equate daily activities with the rigorous demands of the workplace, it is permissible for ALJs to use a claimant's daily activities to assess whether "the testimony about the effects of [a plaintiff's] impairments was credible or exaggerated." *Alvarado*, 836 F.3d at 750 (citations omitted). In line with this instruction, the ALJ first acknowledged that Kallio's daily "activities do not equate directly to the ability to perform full time work." (ECF No. 9-1 at 31.) But he found the activities relevant because they demonstrated Kallio's ability to "engage in a number of normal day-to-day activities, many of which involve at least a light level of exertion . . . ." (*Id.*) The Court can follow the ALJ's logical bridge in concluding that the listed activities require a degree of physical exertion, suggesting that Kallio was not as limited as she maintained. Accordingly, the ALJ's consideration

of Kallio's daily activities to assess her credibility was appropriate. Kallio has not shown a basis for remand.

**CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on August 24, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge